**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JONATHAN GOOD,

        **Plaintiff,**                        CIVIL ACTION NO. 17-cv-10140

    v.                                   DISTRICT JUDGE GERSHWIN A. DRAIN

WENDI WALWORTH *et al.*,          MAGISTRATE JUDGE MONA K. MAJZOUB

        **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jonathan Good filed this *pro se* civil rights action on January 13, 2017, pursuant to 42 U.S.C. § 1983, alleging that Defendants Wendi Walworth, Jeremy Bugbee, Julius Mayfield, Barbara Finch, DuJuna VanDecasteele, Steve Rivard, and Kelly Barnett violated his First Amendment right to be free from retaliation. (Docket no. 1.) This matter comes before the Court on three motions: (1) Defendants' Motion to Dismiss (docket no. 13); (2) Plaintiff's Motion to Stay Proceedings Pending Withdraw [sic] of Defendants' Motion to Dismiss or Decision on Plaintiff's Motion to Strike (docket no. 16); and (3) Plaintiff's Motion to Strike Defendants' Motion to Dismiss and Assess Fines and Costs (docket no. 17). Plaintiff also responded to Defendants' Motion to Dismiss (docket no. 18), and Defendants responded to Plaintiff's Motion to Stay and Motion to Strike (docket nos. 20, 21). This action has been referred to the undersigned for all pretrial purposes. (Docket no. 14.) The Court has reviewed the pleadings, dispenses with oral argument on the motions pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Defendants' Motion to Dismiss (docket no. 13), Plaintiff's Motion to Stay (docket no. 16), and Plaintiff's Motion to Strike (docket no. 17) be **DENIED**.  It is further recommended that Defendant Barnett be dismissed from this action pursuant to Federal Rule of Civil Procedure 25(a).

**II.    REPORT**

   **A.     Background**

Plaintiff is currently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan; however, the events giving rise to the Complaint allegedly occurred while he was incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan. (Docket no. 1 ¶ 2.)  In the Complaint, Plaintiff informs that he filed a number of grievances against Defendant Walworth between the months of September and November of 2013.  (*Id.* ¶¶ 17-21.)  Plaintiff claims that in retaliation for his filing of those grievances, Defendants Walworth, Bugbee, and Mayfield acted together to have Plaintiff removed from his job assignment as a legal writer, and Defendants Finch, VanDecasteele, and Barnett fabricated or suppressed evidence in furtherance of the retaliatory acts of Defendants Walworth, Bugbee, and Mayfield.  (*Id.* ¶¶ 13-14, 34-49, 70.)  As a result of Defendants' actions, Plaintiff was allegedly "laid-in" from his legal writer position on November 14, 2013.  (*Id.* ¶ 22.)  Plaintiff then filed a grievance against Defendants Bugbee and Mayfield on November 16, 2013, for their alleged involvement in the "lay-in." (*Id.* ¶¶ 73-75.)  Plaintiff claims that Defendants Bugbee, VanDecasteele, and Mayfield, upon receiving notice of that grievance, met in the library office and conspired and agreed to retaliate against Plaintiff by ensuring Plaintiff's permanent termination from the legal writer program.  (*Id.* ¶¶ 76-86.)

Plaintiff also claims that on November 27, 2013, Defendants Walworth and Rivard retaliated against him for filing grievances by filing a false Security Classification Screen regarding Plaintiff, which was then used to transfer Plaintiff to the Alger Correctional Facility. (*Id*. ¶¶ 87, 98.)  Plaintiff asserts that the Alger Correctional Facility is the most northerly Security Level IV correctional facility in the State of Michigan, and the transfer therefore prevented him from receiving visits from his then ailing aunt, who has since passed away.  (*Id*. ¶ 87.)  Plaintiff seeks declaratory, compensatory, and punitive relief for Defendants' actions.  (*Id*. ¶¶ 104-07.)

### B.  Governing Law

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and on grounds of qualified immunity.  (Docket no. 13.)

#### 1.  *Motion to Dismiss Standard*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume [the] veracity [of the remaining allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### 2. Qualified Immunity Standard

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That is, "'[t]he defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'" *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the

4

plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

"A defendant who invokes the qualified immunity defense must present facts which, if true, would entitle him to immunity." *Noble v. Schmitt*, 87 F.3d 157, 161 (citing *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989)). If the defendant does so, "the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *See id.*; *see also*, *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir.2004)). "The [plaintiff] will defeat a qualified immunity defense if he can produce sufficient evidence after discovery to prove the existence of genuine issues of material fact regarding the issue of immunity." *Noble*, 87 F.3d at 161 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

**C. Analysis**

*1. Defendants' Motion to Dismiss [13]*

To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendants are persons who were acting under color of state law. Thus, the only remaining issue under a § 1983 analysis is whether they deprived Plaintiff of a constitutional right.

Plaintiff claims that Defendants retaliated against him for filing grievances, in violation of his First Amendment rights. (Docket no. 1.) Prison officials may not retaliate against inmates

who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id*. (citations omitted).

      a.      <u>Protected Conduct</u>

Filing a grievance or a complaint is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Defendants do not contest this assertion. Therefore, for purposes of Defendants' Motion, the Court will assume that Plaintiff was engaged in protected conduct.

      b.      <u>Adverse Action</u>

An action "capable of deterring a person of ordinary firmness from exercising the constitutional right in question" is an adverse action. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citation, internal quotation marks, and emphasis omitted). "[W]hile certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X*, 175 F.3d at 398. "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citations omitted). A plaintiff need not show "actual deterrence;" "[e]ven

the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill*, 630 F.3d at 472.

### i. Termination from Legal Writer Assignment

Defendants argue that Plaintiff's termination from his legal writer assignment does not constitute an adverse action because Plaintiff did not have a constitutional right to that job. (Docket no. 13 at 10.) It is well settled that "no prisoner has a constitutional right to a particular job or to any job." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) ("[T]he Constitution does not create a property or liberty interest in prison employment.") But Defendants' focus on the non-existent constitutional right to prison employment is misplaced; the true right at issue is Plaintiff's constitutional right to be free from retaliation for exercising his First Amendment right to file grievances. *See Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010). Indeed, in *Hill*, the Sixth Circuit rejected an analysis similar to that advanced by Defendants, but in the context of prison transfers: "Even though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, the BOP may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights." *Id*. Logically, then, the fact that a prisoner has no constitutional right to prison employment or a particular job does not necessarily mean that prison officials can terminate a prisoner's employment as a means of retaliating against him for filing grievances. Defendants' argument is therefore unavailing.

The proper inquiry in this matter is whether termination from a prison job is capable of deterring a person of ordinary firmness from exercising his First Amendment right to file grievances. While other circuits have unequivocally answered this question in the affirmative, *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3rd Cir. 2017) ("[T]he termination

of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights, satisfying the second element of a retaliation claim at this stage of the litigation."); *Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner's First Amendment rights violated where he was forced to resign from his job in the prison law library after he was faced with threats of retaliatory transfer for lodging complaints regarding administration of the library); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) ("[A]lthough [a prisoner] has no right to a job or to any particular assignment, prison officials cannot punish [him] for exercising his first amendment rights by denying him certain job assignments or transferring him from one job to another."), the Court has not located, and the parties have not identified, any binding Sixth Circuit authority that directly or definitively addresses this issue. Nevertheless, "'[c]ase law in this circuit suggests that it is arguable that the loss of a prison job is sufficiently adverse to satisfy the second prong of [the *Thaddeus-X*] test.'" *Smiley v. Tennessee*, No. 1:16-CV-469-HSM-SKL, 2017 WL 3975001, at *9 (E.D. Tenn. Sept. 8, 2017) (quoting *Peebles v. Williamson County Justice Center*, No. 3:15-cv-00504, 2015 WL 2121460, at *3 (M.D. Tenn. May 5, 2015) (citing *Brown v. Johnson*, No. 2:10-cv-965, 2012 WL 32711, at *4 (S.D. Ohio Jan. 6, 2012), *report and recommendation adopted*, No. 2:10-cv-965, 2012 WL 3237198 (S.D. Ohio Aug. 7, 2012) (loss of prison job coupled with other conduct by prison officials sufficient to meet adverse action prong))); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (threat to move prisoner out of unit so that he would lose his job could be capable of deterring a person of ordinary firmness from exercising his protected rights); *Bradley v. Conarty*, No. 1:16-CV-715, 2017 WL 4675158, at *2 (W.D. Mich. Oct. 18, 2017) (loss of prison work assignment may amount to adverse action only when combined with some additional negative consequence). Under this precedent, Plaintiff's alleged termination from his

legal writer assignment for filing grievances against Defendant Walworth could constitute an adverse action, and his allegations in this regard are therefore sufficient to support a claim of retaliation.

ii. Transfer to Alger Correctional Facility

With regard to the alleged retaliatory transfer, Defendants correctly assert that the Sixth Circuit has repeatedly held that prison transfers are not evidence of an adverse action that would deter a person of ordinary firmness from engaging in protected conduct. *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006). Further, a prisoner has no protected right to remain incarcerated at a particular institution. *Id.* But as Plaintiff points out, where aggravating circumstances exist in a particular case, a prison transfer can be sufficiently adverse to support a retaliation claim. *Hill*, 630 F.3d at 474-75 (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005); *Pasley*, 345 Fed. App'x at 985); *see also Hix*, 196 F. App'x at 358. In general, such a claim requires foreseeable, negative consequences. *See id.* For example, in *Siggers-El*, "the [p]laintiff not only lost his high paying job that he needed in order to pay his attorney, but the transfer also made it more difficult for his attorney to visit with or represent him because he was moved further away from her." *Siggers-El*, 412 F.3d at 702. And in *Pasley*, the court found it sufficient that the defendant threatened, "first, to have [the plaintiff] moved out of the unit so that he would lose his job and, second, to use her influence with a warden to have him moved to a location where his family would not be able to visit him." *Pasley*, 345 F. App'x at 985. *See also King v. Zamiara,* 150 F. App'x 485, 494 (6th Cir. 2005) (holding that an increase in the prisoner's security-level classification was an adverse action because it resulted in more restrictions and fewer privileges).

Here, Plaintiff's allegations regarding his transfer arise from a Security Classification Screen entered by Defendant Walworth, which is attached to the Complaint as Exhibit Q. (Docket no. 1 ¶ 98; docket no. 1-1 at 5.) According to this document, on November 27, 2013, Defendant Walworth completed and entered the Security Classification Screen regarding Plaintiff for the purpose of transfer. In conducting the screen, Defendant Walworth scored Plaintiff's confinement security level at Level II and Plaintiff's management security level at Level I. She then departed from the scored Level I and II security levels and found that Plaintiff's true security level was a Level IV; she cited the following reason for the departure: "Delay further security level reduction to monitor adjustment." Defendant Rivard approved Defendant Walworth's findings on December 2, 2013. Plaintiff alleges that Defendant Walworth's two-level departure is false and unsupported, that Defendant Rivard's approval of the screen violated Michigan Department of Corrections (MDOC) policy, and that Defendants Walworth and Rivard completed the screen in direct retaliation for the grievances he filed. (*Id*. ¶¶ 87, 88, 98.) Plaintiff alleges that as a result of the Security Classification Screen, he was transferred to the Alger Correctional Facility, which purportedly is the most northerly Security Level IV correctional facility in the State of Michigan, and the transfer therefore prevented him from receiving visits from his then ailing aunt, who has since passed away. (*Id*. ¶ 87, 99.) According to Plaintiff, once he arrived at the Alger Correctional Facility, the facility's Security Classification committee admitted that there was no basis for Plaintiff's placement at the Level IV facility. (*Id*. ¶ 100.)

Under *King,* an increase in a prisoner's security-level classification can constitute an adverse action if it results in more restrictions and fewer privileges, 150 F. App'x at 494; however, Plaintiff does not allege that he actually experienced any greater restrictions or fewer

privileges from the transfer on the basis of his security level. What Plaintiff does allege is that he was transferred to a location where his family, namely, his ailing aunt who is now deceased, was unable to visit him. In *Pasley,* the Sixth Circuit held that threats to move a prisoner to a location where his family would not be able to visit him could constitute an adverse action under Sixth Circuit precedent, and the prisoner's allegations of such threats met the low requirements for surviving dismissal. 345 F. App'x at 985-86. While *Pasley* is an unpublished decision, the Sixth Circuit later acknowledged and accepted it in *Hill v. Lappin*, a published decision that is binding on this court. In *Hill*, the Sixth Circuit characterized the court's decision in *Pasley* as "holding that a threat to transfer the prisoner far away from the prisoner's family was an adverse action because it was foreseeable that his family would not be able to visit him." 630 F.3d at 475. Accordingly, under *Pasley* and *Hill*, Plaintiff's allegation that he suffered an adverse action because he was transferred to a location where his aunt was unable to visit him is sufficient to state a claim in this matter.

          c.        Motivating Factor

"This element addresses whether [a defendant's] subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct." *Hill*, 630 F.3d at 475 (citation omitted). "If the prisoner can show that the [defendant's] adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the [defendant] to show that [he] would have taken the same action even absent such protected conduct." *Id*. Evidence of retaliatory motive can include "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Id*. at 475-76 (citation omitted).

11

Throughout the Complaint, Plaintiff alleges that the temporal proximity of Defendants' actions to the filing of his grievances is evidence of Defendants' retaliatory motive. (Docket no. 1 ¶¶ 54-69, 83, 101.) Plaintiff also alleges that in response to one of his grievances, he received confirmation of the fact that Defendants VanDecasteele, Bugbee, and Mayfield had a discussion regarding Plaintiff and his position as a legal writer, and he claims that this confirmation is direct evidence of Defendants' retaliatory motive. (*Id.* ¶¶ 77, 84, 86.) Additionally, Plaintiff alleges that the fact that he was transferred after he expressed fear of retaliatory transfer in one of his grievances is another example of direct evidence of Defendants' retaliatory motive. (*Id.* ¶ 102.) Defendants do not challenge Plaintiff's allegations concerning the motivation for their actions. Thus, after drawing all reasonable inferences in Plaintiff's favor, and accepting his allegations as true, the Court finds that Plaintiff has sufficiently pleaded evidence of a causal connection between his protected conduct and Defendants' allegedly adverse actions to survive Defendants' Motion to Dismiss.

###### d. Qualified Immunity

Defendants move for qualified immunity on the basis that they did not violate Plaintiff's clearly established constitutional rights because a prisoner does not have a constitutional right to remain in the same prison and there is no constitutional right to prison employment. (Docket no. 13 at 10-13.) But as discussed above, Defendants' argument misses the mark. The constitutional right at issue here is not the non-existent rights cited by Defendants; it is Plaintiff's First Amendment right to be free from retaliation for filing grievances, and that right is clearly established. *See Hill*, 630 F.3d at 473; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). Additionally, having viewed Plaintiff's allegations in a light most

favorable to him, this Court finds that Plaintiff has sufficiently alleged a violation of his First Amendment rights. Accordingly, Defendants' Motion to Dismiss should be denied.

### 2. *Plaintiff's Motion to Stay [16] and Motion to Strike [17]*

Plaintiff has filed a Motion to Strike Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 11 on the grounds that it (1) advances arguments contrary to controlling legal precedent; and (2) misleads the court by misrepresenting the contents of the Complaint. (Docket no. 17.) Plaintiff has also filed a Motion to Stay Proceedings Pending Withdraw [sic] of Defendants' Motion to Dismiss or Decision on Plaintiff's Motion to Strike. (Docket no. 16) In light of the recommendation that Defendants' Motion to Dismiss be denied on the merits, it is further recommended that Plaintiff's Motions be denied as moot.

### 3. *Plaintiff's Claims against Defendant Kelly Barnett*

In a February 21, 2017 letter addressed to the United States Marshals Service, in response to a Notice of a Lawsuit and Request to Waive Service of a Summons, the MDOC declined to accept service on behalf of Defendant Barnett because she passed away on September 30, 2016. This letter was filed with the court on March 3, 2017. (Docket no. 11.) A court may order a substitution of parties due to death "[i]f a party dies and the claim is not extinguished." Fed. R. Civ. P. 25(a)(1). If no motion for substitution is made within 90 days after a party's death is first suggested on the record, "the action by or against the decedent *must be dismissed*." *Id.* (emphasis added). Defendant Barnett's death was first suggested on the record on March 3, 2017, and the period to file a motion for substitution lapsed in June of 2017 without any such filing by Plaintiff or another party. Instead, while procedurally improper, Plaintiff advised in his Response to Defendants' Motion that he "strikes [Defendant Barnett] from his complaint."

13

(Docket no. 18 at 17.) Therefore, Plaintiff's claims against Defendant Barnett should be dismissed under Rule 25(a).

### D. Conclusion

For the reasons stated herein, the court should **DENY** Defendants' Motion to Dismiss (docket no. 13), Plaintiff's Motion to Stay (docket no. 16), and Plaintiff's Motion to Strike (docket no. 17). The court should also dismiss Defendant Barnett from this action pursuant to Federal Rule of Civil Procedure 25(a).

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must

specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 25, 2018          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff Jonathan Good and counsel of record on this date.

Dated: January 25, 2018          s/ Leanne Hosking
                                 Case Manager