UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN GOOD,

        Plaintiff,

                                    Case No.: 17-10140
v.                                    Honorable Gershwin A. Drain

WENDI WALWORTH, *et al.*,

        Defendants.
_____/

**<u>ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION [#22] OVERRULING DEFENDANTS' OBJECTION [#23], DENYING DEFENDANTS' MOTION TO DISMISS [#13], DENYING PLAINTIFF'S MOTION TO STAY [#16], DENYING PLAINTIFF'S MOTION TO STRIKE [#17] AND DISMISSING DEFENDANT KELLY BARNETT PURSUANT TO FED. R. CIV. P. 25(a)</u>**

**I.    INTRODUCTION**

      Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC). He brought the instant 42 U.S.C. § 1983 civil rights action asserting First Amendment violations against Defendants, various MDOC employees, for terminating his prison employment in the legal writer program, as well as for transferring him to the most northerly Level IV security prison in the state in retaliation for writing grievances against the Defendants.

This matter has been referred to Magistrate Judge Mona K. Majzoub for all pretrial purposes pursuant to 28 U.S.C. § 636.

Presently before the Court is Magistrate Judge Majzoub's Report and Recommendation, issued on January 25, 2018. Magistrate Judge Majzoub recommends that the Court deny the following motions: (1) Defendants' Motion to Dismiss, filed on April 11, 2017; (2) Plaintiff's Motion to Stay, filed on June 9, 2017; and (3) Plaintiff's Motion to Strike, also filed on June 9, 2017. Magistrate Judge Majzoub also recommends dismissal of Defendant Kelly Barnett pursuant to Federal Rule of Civil Procedure 25(a).

On February 8, 2018, Defendants filed their Objection to the Report and Recommendation arguing the Magistrate Judge erred in denying qualified immunity. Upon review of the parties' submissions, the Report and Recommendation and the applicable law, the Court will overrule Defendants' objection and will accept and adopt Magistrate Judge Majzoub's January 25, 2018 Report and Recommendation as this Court's factual findings and conclusions of law.

## II. FACTUAL BACKGROUND

The facts giving rise to the instant action all occurred at the St. Louis Correctional Facility (SLCF) in St. Louis, Michigan. Plaintiff claims that in

September and November of 2013, he wrote several grievances against Defendant Walworth, who is an Assistant Resident Unit Manager (ARUM) at the SLCF for Housing Unit 3.  Plaintiff claims that upon learning of his grievances against her, Defendant Walworth conspired with Defendant Bugbee, the Librarian at SLCF, Defendant Mayfield, the Classification Director at SLCF, and Defendant Vandecasteele, SLCF's Assistant Librarian, to have Plaintiff terminated from his legal writer position.  In connection with these efforts, Defendant Vandecasteele prepared a false "363 Prisoner Assignment Evaluation," with findings that Plaintiff's performance was "below average."  Plaintiff also asserts that Defendant Finch, another ARUM for Housing Unit 3, Defendant Barnett, the Assistant Deputy Warden of SLCF, and Defendant Vandecasteele covered up the retaliatory actions of Bugbee, Mayfield, Walworth and Vandecasteele.  Plaintiff was officially terminated from the legal writer program on November 19, 2013.

Plaintiff also maintains that Defendant Walworth retaliated against him for writing grievances against her by having corrections officers shake down Plaintiff's cell and remove legal materials.  She also denied his request for use of the "expedited legal mail process" so that he could meet an approaching deadline in a different civil rights action pending in federal court.  Defendant Walworth also retaliated against Plaintiff by implementing an unwritten policy that required

Plaintiff, in order to be given a grievance form, to inform Defendant Walworth of the basis and person involved in the incident Plaintiff wished to grieve.

Plaintiff further alleges that Defendant Walworth conspired with Defendant Rivard, the Warden of SLCF, to have Plaintiff transferred to the most northerly Level IV correctional facility in the state. Plaintiff maintains that Defendant Walworth prepared a false Security Classification Review Screen which scored Plaintiff at a confinement level of II, and his management level at I. Despite these scores, Defendant Walworth departed upward to a Level IV security classification, which was ultimately approved by Defendant Rivard. Plaintiff was transferred from SLCF on December 2, 2013.

### III. LAW AND ANALYSIS

#### A. STANDARD OF REVIEW

The standard of review to be employed by the court when examining a report and recommendation is set forth in 28 U.S.C. § 636. This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*.

### B. FIRST AMENDMENT RETALIATION

Magistrate Judge Majzoub concluded that Plaintiff's allegations with respect to the loss of his prison job for filing administrative grievances sufficiently state a claim for retaliation under the First Amendment because he has alleged that he (1) engaged in protected conduct of writing non-frivolous grievances, (2) adverse actions, including but not limited to firing him from his job in the legal writer program, denying him access to the "expedited mail process," shakedowns, filing a false "363 Prisoner Assignment Evaluation," as well as falsely classifying him at Level IV, and lastly (3) Plaintiff's grievances motivated these adverse actions. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). She further concluded that Defendants are not entitled to qualified immunity on Plaintiff's retaliation claim.[1]

In their sole objection, Defendants argue that the Magistrate Judge erred by concluding they are not entitled to qualified immunity because"[i]t is not clearly established [that] termination from a legal writer assignment is an adverse action for purposes of a retaliation claim" under the First Amendment. *See* Defs.' Obj.,

---

[1] Plaintiff also bases his retaliation claim on his transfer to the most northerly Level IV security prison, however the Magistrate Judge correctly concluded that the allegations with respect to this claim are insufficient to withstand Rule 12(b)(6) scrutiny. This aspect of the Magistrate Judge's recommendation has not engendered any objections from either party.

Dkt. 23 at Pg ID 290. Therefore, they maintain they are entitled to qualified immunity and this cause of action must be dismissed

Defendants are correct that, in the ordinary case, a district court must rely on binding "precedent by the Supreme Court, its courts of appeals or itself[,]" to find clearly established law. *Ohio Civil Serv. Employees Asso. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). However Defendants fail to appreciate that, "[i]n an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law." *Ohio Civil Serv. Employees Asso. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). Indeed, the Sixth Circuit had held that "a wide variety of sources, even those that are not authoritative, can provide defendants with fair warning" of the unlawfulness of their actions and it is unnecessary that "the very action in question has previously been held unlawful," for defendants to be on notice as to the unconstitutional nature of their conduct. *Barker v. Goodrich*, 649 F.3d 428, 435 (6th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

To render law clearly established, these decisions must perform two things; they must "point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on

constitutional grounds, would be found wanting." *Id*. at 1177-78.

In *Seiter*, the plaintiffs were correctional employees who brought suit against Ohio prison officials for authorizing strip and body cavity searches without probable cause. *Seiter*, 858 F.2d at 1172. The *Seiter* court concluded that the district court erred by denying qualified immunity to the defendant prison officials because the Fourth Amendment right to be free from warrantless body cavity and strip searches was not clearly established at the relevant time period. *Id*. at 1176.

In reaching this conclusion, the *Seiter* court noted that the plaintiffs had failed in their burden to demonstrate that the right had been clearly established because they only relied on two circuit opinions and two district court opinions, neither of which was from the Sixth Circuit. *Id.* Moreover, none of the decisions were entirely favorable to the plaintiffs because they were not contextually similar to the circumstances before the *Seiter* court. *Id*. In determining the Fourth Amendment right to be free from warrantless body cavity and strip searches was not clearly established at the time the prison officials conducted said searches, the *Seiter* court held that "a mere handful of decisions of other circuit and district courts . . . cannot form the basis for a clearly established constitutional right in this circuit." *Id*. at 1177-78.

In contrast, decisions from this Circuit, as well as other circuits, reveal that termination from prison employment in retaliation for filing non-frivolous administrative grievances is unlawful and unconstitutional under the First Amendment. This is unlike the situation in *Seiter* where there was an absence of authority in the circuit and the scant authority that was offered did not wholly support the plaintiffs' contention that the Fourth Amendment right at issue was clearly established at the relevant time period.

For instance, at least three other circuit court of appeals have concluded that termination from prison employment in retaliation for engaging in protected conduct can constitute adverse action. *See Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000).[2] Moreover, in addition to district court decisions outside of this Circuit,[3] there are also numerous cases from district

---

[2] The Third Circuit has reached the same conclusion, however the case was decided after the events giving rise to this action occurred. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

[3] *See Walker v. Pataro*, No. 99-CIV-4607, 2002 U.S. Dist. LEXIS 7067, *18 (S.D.N.Y. Apr. 23, 2002) (concluding that a § 1983 claim can be asserted if a prisoner is reassigned from a prison job in retaliation for filing a grievance); *Floyd v. Dugal*, No. 99-1616, 2003 U.S. Dist. LEXIS 24025, *13-16 (E.D. Pa. Dec. 16, 2003) (concluding that Plaintiff's First Amendment rights may have been violated if the Defendants terminated the plaintiff's prison employment in retaliation for filing grievances); *Turley v. Catchings*, No. 03-C-8491, 2004 U.S. Dist. LEXIS

courts within this Circuit wherein the court concluded that termination from prison employment in retaliation for engaging in protected conduct states a viable First Amendment claim. *See Walker v. Brewer*, No. 1:13-CV-349, 2014 U.S. Dist. LEXIS 36580, *7-8 (W.D. Mich. Mar. 20, 2014) (concluding that firing from prison job is an adverse action); *Brown v. Johnson*, No. 2:10-cv-965, 2012 U.S. Dist. LEXIS 1927 (S.D. Ohio Jan. 6, 2012) (concluding that the law is clearly established that "taking away an inmate's job assignment in retaliation for the exercise of constitutional rights [is] itself a constitutional violation."); *McGough v. Corrections Corp. of Am.*, No. 1:07-0039, 2007 U.S. Dist. LEXIS 78298, * (M.D. Tenn. Oct. 19, 2007) (rejecting the defendants' argument that the plaintiff-prisoner has no constitutional right to prison employment because "Plaintiff's allegations that Defendant Parrish denied him a job in reprisal for filing a grievance, denied him copies of his grievance, and denied him indigent supplies, are sufficient to state a claim against him.").

Moreover, several unpublished decisions from the Sixth Circuit demonstrate that termination of prison employment can amount to adverse action for purposes of a First Amendment retaliation claim. For example, in *Walton v. Gray*, the court

---

18651, (N.D. Ill. Sep. 15, 2004)(denying qualified immunity on the plaintiff-prisoner's First Amendment claim alleging that defendant-officers retaliated against him by terminating his prison job.)

noted that "[t]his court has indicated that loss of a prison job can constitute an adverse action for retaliation purposes.") 695 F. App'x 144 (6th Cir. Aug. 16, 2017) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999)); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. Sept. 29, 2009) (concluding that a threat to have a prisoner moved from a unit so that he would lose his job was "'capable of deterring a person of ordinary firmness' from exercising protected rights, the standard for adverse action").

Additionally, the Court notes that Plaintiff has alleged more than the loss of his prison job as the adverse actions of Defendants. He also alleges that Defendants denied him access to the "expedited mail process," conducted shakedowns and removed legal materials from his cell, filed a false "363 Prisoner Assignment Evaluation," as well as falsely classified him at Level IV. As such, the termination of Plaintiff's job assignment and the other conduct undertaken in retribution for filing grievances are sufficient adverse actions that would deter a person of ordinary firmness from exercising his First Amendment rights. *See Brown v. Johnson*, No. 2:10-cv-965, 2012 U.S. Dist. LEXIS 110734 (S.D. Ohio Aug. 7, 2012).

In *Brown*, the defendants argued that the magistrate judge erred in concluding that it is clearly established that the loss of prison employment is an

adverse action for retaliation purposes. *Id*. at *4. In rejecting this argument, the *Brown* court noted that *Thaddeus-X* listed a whole host of adverse actions such as "harassing cell searches, seizure of legal materials, denial of hygiene items, destruction of legal materials, transfer to segregation, confiscation of tennis shoes, and denial of access to the law library" which would give a "reasonable" person "'fair warning' that the actions in this case" of filing false charges and loss of a prison job "could be deemed sufficiently adverse to run afoul of the constitution." *Id*. at *12.

Accordingly, Magistrate Judge Majzoub correctly recommended denying qualified immunity to the Defendants. Case law from this Circuit, as well as outside of this Circuit, gave Defendants fair warning that termination from prison employment in retaliation for filing non-frivolous grievances violates the First Amendment. Defendants' objection is therefore overruled.

### C. DISMISSAL OF DEFENDANT BARNETT

Lastly, the Court notes that Magistrate Judge Majzoub's recommendation to dismiss Defendant Barnett is correct. Defendant Barnett passed away prior to the initiation of the instant lawsuit. Rule 25(a) of the Federal Rules of Civil Procedure requires that she be dismissed from this action because no timely motion for

substitution has been filed herein. Accordingly, the Court will dismiss Defendant Barnett from the instant proceedings.

## IV. CONCLUSION

For the reasons articulated above, IT IS ORDERED that Magistrate Judge Mona K. Mazjoub's January 25, 2018 Report and Recommendation [#22] is HEREBY ACCEPTED AND ADOPTED as this Court's factual findings and conclusions of law. Defendants' Objections [#23] are OVERRULED.

Defendants' Motion to Dismiss [#13] is DENIED. Plaintiff's Motion to Stay [#16] is DENIED. Plaintiff's Motion to Strike [#17] is DENIED. Defendant Kelly Barnett is DISMISSED from this action.

This matter continues to be referred to Magistrate Judge Majzoub pursuant to 28 U.S.C. § 636(b)(1)(A) and/or 28 U.S.C. § 636(b)(1)(B).

SO ORDERED.

Dated: March 21, 2018 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 21, 2018, by electronic and/or ordinary mail.
<u>/s/ Tanya Bankston</u>
Deputy Clerk