UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN GOOD,

        Plaintiff,

v.

WENDI WALWORTH *et al.,*

        Defendants.

Case No. 17-10140

District Judge Gershwin A. Drain
Magistrate Judge R. Steven Whalen

/

**REPORT AND RECOMMENDATION**

On January 13, 2017, Plaintiff Jonathan Good ("Plaintiff"), an inmate in the custody of the Michigan Department of Corrections ("MDOC") filed the instant action alleging the violation of his civil rights under 42 U.S.C. § 1983. Currently before the Court is Defendant Walworth, Bugbee, Mayfield, Finch, VanDecasteele, and Rivard's Motion for Summary Judgment [Doc. #56] which has been referred for Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendants' motion [Doc. #56] be GRANTED, dismissing these Defendants WITH PREJUDICE.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, currently housed at the Kinross Correctional Facility ("KCF") in Kincheloe, Michigan, makes the following allegations pertaining to his prior incarceration at the St. Louis Correctional Facility ("SLF") in St. Louis, Michigan. *Complaint,* ¶ 2. Plaintiff filed a number of grievances between the months of September and November of 2013 against Defendant Wendi Walworth ("Walworth"), an Assistant Resident Unit Manager ("ARUM")

of Housing Unit 3 for SLF. *Id.* at ¶¶ 17-21. Plaintiff claims that in retaliation for filing those grievances, Defendants Walworth, Jeremy Bugbee ("Bugbee"), the Librarian at SLC, and Julius Mayfield ("Mayfield"), the Classification Director at SLF acted in concert to have Plaintiff removed from his job as a legal writer, and that Defendants Barbara Finch ("Finch"), another ARUM for Housing Unit 3, Dujuna VanDecasteele ("VanDecasteele") SLC's Assistant Librarian, and Kelly Barnett ("Barnett"), Assistant Deputy Warden of SLC, fabricated or suppressed evidence in furtherance of the retaliatory acts of Defendants Walworth, Bugbee, and Mayfield. *Id.* at ¶¶ at 13-14, 34-49, 70. As a result of Defendants' actions, Plaintiff was allegedly "laid-in" from his legal writer position on November 14, 2013. *Id.* at ¶ 22. Plaintiff then filed a grievance against Defendants Bugbee and Mayfield on November 16, 2013, for their alleged involvement in the "lay-in." *Id.* at ¶¶ 73-75. Plaintiff claims that Defendants Bugbee, VanDecasteele, and Mayfield, upon receiving notice of that grievance, met in the library office and conspired and agreed to retaliate against Plaintiff by ensuring his permanent termination from the legal writer program. *Id.* at ¶¶ 76-86.

Plaintiff alleges additionally that on November 27, 2013, Defendants Walworth and Steve Rivard ("Rivard"), the Warden of SLC, retaliated against him for filing grievances by filing a false Security Classification Screen regarding Plaintiff, which was then used to transfer Plaintiff to the Alger Correctional Facility ("LMF"). *Id.* at ¶¶ 87, 98. Plaintiff notes that LMF is the most northerly Security Level IV correctional facility in the State of Michigan and as such, the transfer prevented him from receiving visits from his ailing aunt who has since passed away. *Id.* at ¶ 87. Plaintiff seeks declaratory, compensatory, and punitive relief for Defendants' actions. *Id* .at ¶¶ 104-07.

On March 27, 2018, the Honorable Gershwin A. Drain adopted the Report and

Recommendation of Magistrate Judge Mona K. Majzoub to deny in part Defendants' motion to dismiss, finding that Plaintiff had stated a claim of First Amendment retaliation allegations as to (1) his termination from his job in the legal writer program (2) denial of access to the "expedited mail process" (3) "shakedowns" (4) filing of a false job evaluation (5) Plaintiff's erroneous classification at a security level IV, and (6) his transfer. *Amended Order Accepting and Adopting Report and Recommendation* (ECF No. 29, PageID.372). The Court also dismissed Defendant Barnett, noting that she passed away prior to the present action and that "no timely motion for substitution" had been filed. (ECF No. 27, PageID.367-368).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as

a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

Defendants argue, in effect, that Plaintiff cannot show a causal connection between the protected conduct of writing grievances against Defendant Walworth and the alleged acts of retaliation. *Defendants' Brief, Docket #56* (ECF No. 56, PageID.1170). In other words, Defendants contend that non-retaliatory reasons exist for (1) Plaintiff's "lay-in" from his job in the legal writer program (2) denial of access to the "expedited mail process" (3) "shakedowns" (4) the filing of a negative job evaluation (5) his classification at security level IV, and (6) his transfer. *Id.*

In *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection

between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Circumstantial evidence of causation "can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Hill v. Lappin*, 630 F.3d 468, 475-476 (6th Cir. 2010)(*citing Thaddeus-X* at 399). However, "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X* at 399.

### A. "Protected Activity" and "Adverse Actions"

The filing of legitimate grievances is "protected activity." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)("inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf").[1] Consistent with the District

---

[1] Defendants argue solely that Plaintiff cannot establish the third element of a retaliation claim due to Plaintiff's failure to show causation between the protected activity (filing grievances) and the adverse action. However, the undersigned notes that the great weight of evidence shows that Plaintiff's grievances were frivolous. "[T]he right to file grievances is protected only insofar as the grievances are not 'frivolous.'" *Beasley v. Buchanan*, 2020 WL 858301, at *3 (W.D.Mich. February 21, 2020)(*quoting Herron, supra,* 203 F.3d at 415). "'Abusive or manipulative use of a grievance system would not be protected conduct,'" *id.* (*quoting King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)), "and an 'inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory'" *id.* (*quoting Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. September 30, 2002)).

*See* Plaintiff's grievance identifier SLF 13-09-1221-07A (Walworth's refusal to give Plaintiff the legal mail of other inmates supported by three separate portions of the MDOC Policy Directive); SLF13-08-1051-17G (Plaintiff's claim for "reimbursement" denied after post-search inspection did not show damaged or mishandled property); SLF-13-11-1385-11C (Plaintiff's grievance that a "new" grievance policy existed which violated his due process rights was based on wholly erroneous statement by fellow prisoner); SLF 13-11-1386-15B (grievance based on Defendant Walworth's refusal to send his Step III grievance to an earlier grievance by expedited mail on basis that grievance was not legal mail supported by MDOC Policy Directive 05:030118(O) which does not include grievances among the definition of legal mail); SLF 13-11-1423-17A (grievance regarding search of cell, temporary cessation of legal writer work - search of cell revealed the legal documents belonging to two other prisoners in violation of MDOC policy, job cessation due to pending Notice of Intent pertaining to Plaintiff's acknowledged actions which were violation of

Court's earlier findings, Plaintiff's termination from his job in the legal writer program, denial of access to the "expedited mail process," "shakedowns," the filing of a false 363 Prisoner Assignment Evaluation," his erroneous classification at security level IV, and transfer are at least sufficient to state "adverse actions" to survive the previous Fed. R. Civ. P. 12(b)(6) motion. *Docket #29* (ECF No. 29, PageID.372).

### B. Causation

### i. Sequence of Events

On August 28, 2013, Plaintiff filed grievance identifier SLF-13-08-1051-17G, stating that his headphones had been cracked, belongings "throw[n] about the cell," and legal documents crumpled during a cell search. (ECF No. 1, PageID.33). A grievance response of September 9, 2013 by Defendant Walworth states that the Corrections Officer who conducted the search went back to the cell at Plaintiff's request but after examining the cell, noted that "any damage or mess left in the cell did not occur during his shakedown." (ECF No. 1, PageID.34).[2] The Corrections Officer stated further that during a cell search, he customarily placed headphones on the television to avoid damaging them. *Id.*

Plaintiff's grievances against Defendant Walworth began eight days after she denied grievance identifier SLF-13-08-1051-17G at Step I. On September 17, 2013, Plaintiff filed

---

MDOC policy.
     However, the Court need not determine whether Plaintiff meets the "protected activity" element of the retaliation claim given that the same evidence, discussed in detail below, supports Defendants' claim that the adverse actions were performed for legitimate, non-retaliatory reasons.

[2]
     Plaintiff's claims are unavailing to the extent that he appears to fault Defendant Walworth for her role denying his Step I grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)("denial of administrative grievances or the failure to act," insufficient to show liability under § 1983).

grievance identifier SLF 13-09-1221-07A alleging that on August 1, 2013, Defendant Walworth erroneously refused to give him his "legal mail."[3] *Defendant's Exhibit 13* (ECF No. 56-14 , PageID.1253). A hearing report from September 13, 2013 states that the mail was not delivered to Plaintiff because it was "legal mail" regarding "another prisoner's criminal case." *Id., see also* (ECF No. 1, PageID.82) Under Policy Directive 05.03.118(MM) the item was deemed "a threat to the security, good order or discipline of the facility." *Id.* The Step II response by Defendant ARUM Finch states that the mail in question was sent to Plaintiff "from the mother of [another] prisoner" and included material sent by the State Appellate Defender Office to the mother of the other prisoner and contained "explicit details" of the other prisoner's case.[4] *Id.*

On October 17, 2013, Defendant Walworth composed a letter to now-dismissed Deputy Warden Barnett stating that it had come to her attention that Plaintiff had been preparing legal work for other prisoners and that another inmate's mother was now using "J-Pay" to send messages between Plaintiff and the other prisoner. *Defendants' Exhibit 2*

---

[3] In addition to the copies of grievances provide with the present motion, Defendants cite grievance SLF 13-08-1051-17C which purportedly was written against a non-Defendant Corrections Officer for an unrelated matter. *Defendants' Brief* at 5. Defendants state that Defendant Walworth provided the Step I response to this grievance. *Defendants' Brief* at 5 (ECF No. 56, PageID.1167)(*citing Defendants' Exhibit 12* (ECF No. 56-17 , PageID.1248)) . However, while Defendants cite Exhibit 12, Exhibit 12, is actually a copy of another grievance (SLF 13-11-1423-17A) which is duplicated at Exhibit 16. (ECF No. 56-17 , PageID.1268). Defendants were apparently referring to SLF 13-08-1051-17G, a fragment of which (Step II response only) is found in Defendants' Exhibit 14. (ECF No. 56-15, PageID.1259).

[4] Specifically, Plaintiff's attempted procurement of the legal mail of others was prohibited under MDOC Policy Directive 05.03.116(D) which states that "Prisoners shall be allowed to have confidential and uncensored correspondence with an attorney, the courts, and legitimate legal assistance organizations . . ." Plaintiff's attempted possession of the legal mail of other inmates is also contrary to MDOC Policy Directive 04.07.112(CC) which prohibits the possession of authorized property of another prisoner. *Defendants' Exhibit 18.*

(ECF No. 53-3, PageID.1188). Attached is a letter by Plaintiff purportedly sent to the other prisoner's mother, stating that "paperwork" was "on its way to you, court, and [prisoner], and that the pleadings were "timely under the law of [] 28 U.S.C. 2254." *Id.* Defendant Walworth sent a second email which included a letter from Plaintiff to the wife of another inmate stating that he hoped that "we can move for immediate consideration" of an "application for leave to appeal," and that Plaintiff "hope[d]" that they could "to get this all done in short order." *Defendant's Exhibit 3* (ECF No. 53-4, PageID.1190). The same day, Plaintiff was warned by Defendant Bugbee that he was not allowed to be in possession of another inmate's legal work. *Defendant's Exhibit 4, Bugbee Affidavit* at ¶ 4 (ECF No. 53-5, PageID.1193).

On October 23, 2013, Defendant Rivard, SLF's warden composed a Step II response to grievance identifier SLF-13-08-1051-17G, stating that contrary to Plaintiff's contention, his property was not left in disarray or damaged by the August, 2013 shakedown of his cell. *Defendants' Exhibit 14,* SLF13-08-1051-17G (Step II response)(ECF No. 56-15, PageID.1259).

On November 7, 2013 Plaintiff filed grievance identifier SLF-13-11-1385-11C, alleging that he was told the same day by his "block rep." that he would have to kite his Assistant Resident Unit Supervisor ("ARUS") before writing a grievance. *Defendant's Exhibit 14.* (ECF No. 56-15, PageID.1259). Plaintiff stated that the procedure was a "direct violation of due process" because it "forces prisoners to reveal [their] grievable issue" before filing the grievance. *Id.* The November 19, 2013 Step I response points out that while Plaintiff claimed that he was deprived of a grievance form, he was able to use a grievance form to file a grievance on the same day. *Id.* The Step I response states further that the "block rep" (a prisoner) and not a staff member, provided Plaintiff with an

erroneous account of the actual grievance policy. *Id.*

On November 11, 2013 Plaintiff filed grievance identifier SLF 13-11-1386-15B alleging that on November 7, 2013, he signed up to send out legal mail via "expedited" legal mail procedure but was told by Defendant Walworth that because he was mailing a Step Three grievance and not legal mail, he could not use the expedited mail process. *Defendants' Exhibit 15* (ECF No. 56-16, PageID.1264). The Step II response states that under MDOC Policy Directive 05:030118(O), Plaintiff's Step III grievance was not included in the Policy Directive's definition of "legal mail."

On November 12, 2013, Defendant Walworth informed Defendant Bugbee that another prisoner ("Bentley") was placed in administrative segregation, after which Bentley's family requested that another prisoner retrieve Bentley's legal paperwork from Plaintiff. *Defendants' Exhibits 7.* Defendant Walworth states that she was ordered by former Defendant Barnett to have staff perform a search of Plaintiff's cell after presented with evidence that Plaintiff was legally assisting other prisoners outside of his role as a legal writer. *Defendants' Exhibit 5, Walworth Affidavit* at ¶ 7.

Upon searching Plaintiff's cell on November 14, 2013, MDOC staff discovered legal work belonging to Bentley and another prisoner in violation of MDOC Policy Directive 04.07.112(CC), which prohibits the possession of authorized property of another prisoner. *Defendants' Exhibit 18.* Plaintiff's position as a legal writer was placed "on hold" pending "Notice of Intent to Conduct an Administrative Hearing" ("NOI"). *Defendants' Exhibit 6* (ECF No. 56-7, PageID.1231). The NOI states that despite the fact that Plaintiff had been previously warned that accepting money for his legal writing services from other prisoners would not be tolerated, he had received payment from various prisoners' family members for his legal work. *Id.*

Defendant Bugbee states that on November 18, 2013, as a result of Plaintiff's violation of policy and his poor work performance, he gave Plaintiff a poor work evaluation. *Defendant's Exhibit 4, Bugbee Affidavit* at ¶ 5 (ECF No. 56-5, PageID.1193). He denies retaliating against Plaintiff for the filing of grievances, noting that he was unaware of any grievances filed by Plaintiff against others prior to the current lawsuit. *Id.* at ¶ 9. On November 20, 2013, Defendant Bugbee wrote that Plaintiff would not be able to work as a legal writer pending resolution of the NOI regarding the following (1) a November 14, 2013 search of Plaintiff's cell revealed the legal work of two prisoners and (2) electronic messages and phone calls showed that Plaintiff had improperly "accepted payment" for his work as a legal writer. *Defendants' Exhibit 8* (ECF No. 56-9, PageID.1235). Defendant Bugbee noted that "[h]aving [Plaintiff] on assignment while the NOI is being heard would have created a safety and security issue, because of his access to sensitive documents, prisoner files, and programs in the file cabinet and on the legal writer computers." *Id.*

Plaintiff filed grievance identifier SLF 13-11-1423-17A on November 18, 2013 alleging that during the November 14, 2016 cell search, the legal material of two other inmates was taken. *Defendants' Exhibit 16* (ECF No. 56-17, PageID.1268). *Id.* He alleges that the shakedown occurred after he warned Defendant Walworth that she would be grieved for interfering with his access to the grievance process and for refusing to send out Plaintiff's expedited legal mail. *Id.* The November 20, 2013 Step I response to this grievance states that Plaintiff requested "back pay" from his job; that Defendant Walworth's "actions" be expunged from his file; that Defendant Walworth be "discipline[d];" an injunction on further "retaliation;" and punitive damages of $25,000. *Id.*

On November 27, 2013, Defendant Walworth emailed former Defendant Barnett,

stating that Plaintiff did "not appear to be a good candidate for a Level II security facility due to (1) Plaintiff was serving a life sentence (2) he escaped from a county jail in November, 2008, and (3) he was recently issued an NOI relative to his position as a legal writer because it was found that he was charging fees to prisoners for whom he was serving as a legal writer. *Defendants' Exhibit 10* (ECF No. 56-11, PageID.1242). A transfer order of December 2, 2013 states that while Plaintiff was currently held at a Level II security level facility, he was at risk for "property" violations and was on Special Problem Offender Notice ("SPON"). *Defendants' Exhibit 9* (ECF No. 56-10, PageID.1241).

On December 4, 2013, Plaintiff was transferred out of SLF. *Defendants' Exhibit 6* (ECF No. 56-10, PageID.1241). The reason given for the transfer was that SLF was "making bed space" for an incoming prisoner. *Id.*

On January 10, 2014, Defendant Rivard provided a Step Two response to the November 16, 2013 grievance, stating that while Defendant Walworth ordered the cell searched, she in turn was ordered to search the cell by former Defendant Barnett. *Defendant's Exhibit 16* (ECF No. 56-17, PageID.1272). Defendant Rivard notes that at a hearing following the cell search, the legal material of other prisoners in Plaintiff's cell was found to be contraband under MDOC Policy Directive 04-07.112(CC), which unless authorized by MDOC policy, forbids possession of another prisoner's personal property. *Id.*

### ii. Defendants Have Provided Legitimate, Non-Retaliatory Reasons for the "Adverse Actions"

Notwithstanding any temporal proximity between the protected conduct and adverse action shown by the above chronology, "the defendant may still avoid liability by showing 'that he would have taken the same action in the absence of the protected activity.' " *Whiteside v. Parrish*, 387 Fed.Appx. 608, 612, 2010 WL 2842746, at *4 (6th Cir. July 21,

2010)(*citing Thaddeus-X* at 399). Where a defendant can show non-retaliatory motives for his actions, "summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Wenk v. O'Reilly*, 783 F.3d 585, 594 (6th Cir. 2015)(citing *Dye v. Office of the Racing Commission*, 702 F.3d 286, 294-295)(6th Cir. 2012)).

### a. "Lay-In" from Job in the Legal Writer Program

The November 15, 2013 NOI states that Plaintiff's permanent removal from the Legal Writer Program was "proposed" for the following reasons: (1) A search of Plaintiff's cell one day earlier found the legal paperwork of two other prisoners (2) Plaintiff was found to be "in contact" with the grandmother of one of the prisoners whose work was found in the cell, had received $150 to do the prisoner's appeal, and had recently asked her for "more money to get it done right away," and (3) Plaintiff had been in contact with "family members" of the other prisoners via J-Pay and phone conversations. *Defendants' Exhibit 6* (ECF No. 56-7, PageID.1231). Plaintiff's actions were deemed in violation of MDOC Policy Directive 05.03.116(N) which states "to avoid exploitation of prisoners by other prisoners, prisoners are prohibited from directly or indirectly charging or receiving compensation in any form, including money, goods, or services for providing legal services to, or obtaining legal services from another prisoner." The NOI notes further that under the same subsection, "file materials" used by the Legal Writers were to be maintained and secured by library staff and that the Legal Writer Program manual states that Legal Writers may not keep other prisoners' legal work in their cell and were not to continue assisting a prisoner after the other prisoner was transferred. *Id.*

Significantly, Plaintiff does not deny that he kept the legal files of other prisoners in his cell or that he received recompense for his legal services. *Response,* 2 (ECF No. 63,

PageID.1468). Instead, he states that the portion of the Policy Directive prohibiting payment for legal services was not added until after the events in question occurred. *Id.* However ¶ N of this Directive, as cited by Defendants in the NOI, was included in the MDOC Policy Directive as early as July 21, 2008. *See Peterson v. Hall*, 2012 WL 3111632, at *6 (E.D.Mich. July 2, 2012).[5] Likewise, Plaintiff's claim that his attempted receipt of the legal mail of other prisoners was not prohibited until after the events in question is not well taken. (ECF No. 63, PageID.1469). *See Siggers v. Campbell*, 652 F.3d 681, 685 (6th Cir. 2011)("prisoners' right to send and receive uncensored mail to or from any person or organization" included in MDOC policy directive long before the events in question). Thus, Plaintiff's claim that the restriction on taking money for legal service or keeping prisoners' legal files (independent of his work as a legal writer) were added to the Directive until after the events in question is without merit.

Plaintiff also disputes the evidentiary value of the NOI, noting that it represented only "allegations" of wrongdoing. *Response* at 4 (ECF No. 63, PageID.1470). He notes further that he was transferred before a hearing was held. *Response* at 5 (ECF No. 63, PageID.1471). He disputes that he was at any time terminated from his position, noting that during the time the NOI was pending he was "laid-in," not terminated.[6] *Id.*

Plaintiff's claim that he was not "terminated" but rather, laid-in pending hearing on the notice of intent is confirmed by the answers to interrogatories provided by both Defendants' Bugbee and VanDecasteele. *Response* at 19 (ECF No. 63, PageID.1485)(ECF

---

[5]Defendants' failure to include in their exhibits a copy of the MDOC Policy Directive *in effect at the time of relevant events* does not make the Court's job easier. *See Defendants' Exhibit 1* ((ECF No. 56-2, PageID.1182).

[6]While none of the parties have provided a copy of the results of the NOI hearing, Defendant Rivard's Step II response to grievance identifier 13-11-01423-17A states that Defendant Walworth "held a hearing on the materials."

No. 63, PageID.1507). However, Plaintiff's concession that he was laid-in (based on evidence referenced in the NOI) rather than terminated prior to his transfer does not support his claim of retaliation against these two Defendants. Plaintiff also disputes Defendant Bugbee's claim that he completed Plaintiff's work evaluation, asserting that Defendant VanDecasteele actually completed the work evaluation and that Bugbee simply "approved" the evaluation. *Response* at 6 (ECF No. 63, PageID.1472). However, the import of whether Defendant Bugbee personally composed the work evaluation, completed it in tandem with Defendant VanDeCasteele, or simply signed off on VandeCasteele's evaluation is uncertain. The fact remains that Plaintiff does not dispute the underlying allegations in the NOI. At no point in his response to the present motion does he deny that he kept the legal work of other prisoners in his cell or accepted recompense for his legal services outside his work as a legal writer.

Because Plaintiff's lay-in occurred as a result of his violation of at least three portions of the policy directive and violations of the requirements set forth in the Legal Writer's Program manual, *see* (ECF No. 1, PageID.63), Defendants have provided non-retaliatory reasons for the termination.

### b. Denial of Access to the "Expedited Mail Process"

Plaintiff's claim that he was improperly denied the "Expedited Mail Process" for his "legal mail" consisting of a Step III grievance and that the definition of "legal mail" has changed since the 2013 events in question is without merit. "Legal mail" as defined by MDOC Policy Directive at least as early as September 14, 2009 is limited as follows: "[o]nly mail from an attorney or law firm, a legitimate legal service organization, a non-prisoner paralegal working on behalf of an attorney, law firm, or legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court,

a clerk of the court, or a Friend of the Court. . ." *Salem v. Warren*, 609 Fed.Appx. 281, 282 (6th Cir. April 23, 2015); *Velthuysen v. Bolton*, 2011 WL 4074642, at *2 (W.D.Mich. August 23, 2011) MDOC Policy Directive 05.03.118 (HH); *Hurick v. Berghuis*, 2014 WL 1256000, at *8 (W.D.Mich. March 26, 2014)(same). A grievance is not legal mail.

### c. Search of Plaintiff's Cell

Plaintiff's claim that his cell was searched in retaliation for filing grievances on November 14, 2013 is also subject to summary judgment. Standing alone, Plaintiff's September 17, 2013 attempt (via grievance) to take receipt of another prisoner's legal mail is a violation of Policy Directive 05.03.116(D), 05.03.118(MM), and 04.07.112(CC), pertaining respectively to the confidentiality of prisoners' legal mail, security concerns, and the prohibition on the possession of the authorized property of other prisoners.

Defendants have provided legitimate, non-retaliatory reasons for the search of Plaintiff's cell on November 14, 2013. First, Defendant Walworth states that former Defendant Barnett ordered the search after Defendant Walworth presented evidence that Plaintiff was performing legal work for prisoners outside of his job as a legal writer. *Defendants' Exhibit 5, Walworth Affidavit* at ¶ 7 (ECF No. 56-6, PageID.1201). The search itself was ordered by a now-dismissed Defendant. Second, Plaintiff's grievance regarding the search does not allege that his property was damaged. *Defendants Exhibit 16* (ECF No. 56-17, PageID.1269). He admits that the search was limited to a search for the legal files of other prisoners. *Id.* The grievance does not allege that Defendants destroyed or mistreated his property, but rather, that the legal files of two other prisoners were unlawfully taken from his cell. As discussed above, Plaintiff's erroneous belief that he was entitled to possess the legal files of other prisoners (outside his work as a legal writer) is contradicted by three separate portions of the MDOC Policy Directive. Third, Plaintiff is hard put to

show that the search was performed for non-legitimate reasons given that it revealed contraband material. ((ECF No. 1, PageID.55). Because Defendants have provided non-retaliatory reasons for the cell searches, these claims should be dismissed.

### d. The Filing of a "False" Job Evaluation

Plaintiff alleges that in furtherance of the retaliatory activity, Defendant VanDecasteele filed a "false" prisoner evaluation, erroneously stating that he had failed to follow the rules of the legal writer program, failed to follow instructions, did not keep his work area neat and clean, was not able to work without constant supervision, was unwilling to perform additional duties, and "argued or complained" with supervisors. *Complaint* at ¶ 80. A "Clerk Warning Log" for written warnings presumably given to legal writer from March, 2012 through November 12, 2013 shows only one *legible* warning to Plaintiff not to tell "staff what to do." (ECF No. 1, PageID.71). However, a November 20, 2012 illegible entry appears to consist of a second warning to Plaintiff. *Id.* Plaintiff's claim that the written warning log proves that his final work evaluation was falsified is without merit. Further, given that Plaintiff's admitted legal work for recompense constituted a gross violation of his responsibilities as a legal writer and that he had been previously warned to cease such activity, the work evaluation showing deficiencies in (1) following instructions (2) working according to job description (2) working without supervision and, (3) working without argument or complaint is not inappropriate.[7] (ECF No. 1, PageID.72). Plaintiff has failed to show that the evaluation was composed in retaliation for the exercise of his First Amendment right to file grievances.

---

[7] While Plaintiff also disputes the finding that his work area was not "neat and clean," this finding is irrelevant to whether he was properly laid-in following the discovery that he was being paid to perform legal work in violation of his job requirements.

### e. Classification at Security Level IV and Transfer.

Plaintiff's transfer order, signed December 2, 2013, states that Plaintiff was to be transferred from a Level II security classification to a Level IV facility. (ECF No. 56-10, PageID.1241). The transfer order states that while Plaintiff did not pose a significant violence risk, he constituted a "high" property risk. *Id.*

As to the reason for the transfer, the order states that Plaintiff was to be transferred to make way for an incoming prisoner. *Id.* While following the transfer, Plaintiff filed a grievance regarding his two-step upward departure to security classification IV, the Step I response states that Plaintiff "was properly transferred to the level IV facility given that he had just reached the third year of a life sentence and "in light of the totality of circumstances, [Plaintiff] need[ed] to continue positive behavior in order to get to a lower level of classification." While Plaintiff's Step II appeal notes that at the time of transfer, he had in fact served over four years of a life sentence, he does not otherwise dispute the rationale that placement in a higher security institution was appropriate given that he had been incarcerated for a relatively short time in proportion to his life sentence. The Security Classification Screen of December 2, 2013 states that while Plaintiff was not a violence risk, a "delay [of] further security level reduction to monitor adjustment" was warranted (ECF No. 1-1, PageID.115). Notably, while Plaintiff again alleges that the change in security and transfer were performed in retaliation for his grievances, he admits to the underlying activity of legal work for recompense which resulted in cell searches, the poor job review, and heightened security classification.

In summary, whether or not some degree of temporal proximity might exist between the grievances and adverse actions, Plaintiff is unable to establish that the adverse actions of the cell search, the "mishandling" of his legal mail, unfavorable job performance rating,

the loss of his job, or the transfer were motivated by retaliatory animus. In other words, Plaintiff does not deny the behavior giving rise to the "adverse actions," but instead relies on a wholly meritless argument that his behavior did not a constitute a violation of the MDOC Policy Directive. Given the repeated and blatant violations of the Policy Directives, Plaintiff cannot rebut the Defendants' showing that they would taken the same action in the absence of the protected activity. *Thaddeus-X,* 175 F.3d at 399.

## IV. CONCLUSION

I recommend that Defendants' Motion for Summary Judgment [Doc. #56] be GRANTED, dismissing these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the

same order raised, each issue contained within the objections.

                                                s/R. Steven Whalen

                                                R. STEVEN WHALEN
                                                United States Magistrate Judge

Dated: March 30, 2020

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 30, 2020 electronically and/or by U.S. mail.

                                                s/Carolyn M. Ciesla
                                                Case Manager